IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
In Admiralty
No. 4:13-CV-199-F

| | | |
|---|---|---|
| SHERMAN D. GOODWIN, | ) | |
| | ) | |
| Plaintiff and | ) | |
| Counterclaim | ) | |
| Defendant., | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| ANTOINETTE MAGEE COCKRELL, | ) | |
| and JUDY I. SULLIVAN, Co-Executrix of | ) | |
| the Estate of ARTHUR E. COCKRELL, | ) | |
| Defendants and | ) | |
| Counterclaimants. | ) | |

This matter is came before the court for a pretrial hearing on November 7, 2014. Plaintiff was present at the hearing and represented by Wesley Cooper and Stevenson Weeks. Defendant Antoinette Cockrell was present at the hearing, and represented by Christopher Abel and Stephen Jackson. This order memorializes and clarifies certain rulings made at the hearing.

Additionally, since the hearing and subsequent first day of trial in this matter, the parties have filed four motions: (1) Defendants' Motion to Strike the New Report of Ann T. Neulicht, Ph.D. and to Preclude Dr. Neulicht from testifying at trial [DE-91]; (2) Plaintiff's Second Motion to Amend Pretrial Order Based on Newly Discovered Evidence [DE-93]; (3) Defendants' Motion to Strike Certain Portions of Sherman Goodwin's Trial Testimony [DE-96]; and (4) Plaintiff's Motion to Continue [DE-97].

## I. PRETRIAL HEARING RULINGS

**A.      Defendants' motions in limine to exclude testimony of certain opinion witnesses**

At the pretrial hearing, the court first considered Defendants' motions in limine to exclude

the testimony of Ann T. Neulicht, Ph.D [DE-46] and portions of the testimony of Captain Donald Davis [DE-49]. With regard to Dr. Neulicht, Defendants argued, *inter alia*, that her opinions are "either unsupported by any explanation of their basis, merely a repetition of what Goodwin himself has told her, are so far afield from her own expertise as to be nothing more than lay opinions, or are so clearly tainted by invalid assumptions and lack of inquiry into the relevant facts as to render them completely unreliable under even the most charitable application of *Daubert* and its progeny." Def.'s Mot. and Mem. of Law in Support of their Mot. in Limine to Exclude the Testimony of Ann T. Neulicht, Ph.D [DE-46] at 22. Defendants also argued that portions of Captain Davis's testimony should be excluded because his opinion either was unreliable or he lacked a reasonable foundation for proffering his opinion. Def.'s Mot. and Mem. of Law in Support of their Mot. in Limine to Exclude Portions of the Testimony of Captain Donald Davis [DE-49] at 7-10, 13-14.[1] In response to these motions, Plaintiff submitted affidavits from both Dr. Neulicht [DE-55-1] and Captain Davis [DE-62-1]. Defendants, in reply, argued that affidavits either constituted an untimely supplementation or expert disclosure that violates the Scheduling Order in this case, or alternatively, had no bearing on the court's consideration of the motions in limine. Reply [DE-74] at 3-6; Reply [DE-75] at 3-6. Defendants also argued that the affidavits should be excluded under Rule 16(f) of the Federal Rules of Civil Procedure. Reply [DE-74] at 6-10; Reply [DE-75] at 6-10.

At the hearing, the court noted that another district court, when confronted with a similar motion in limine to exclude an opinion witnesses' testimony, determined that it would allow the

---

[1] Defendants also argued that Captain Davis is unqualified to testify as an expert with respect to valuing the efforts necessary to salvage the TONI SEA, and that his methodology for valuing the TONI SEA's salvage is unreliable. *Id.* at 11. Defendants eventually dismissed their counter-claim against Plaintiff, rendering this portion of their motion moot.

2

challenged expert to testify "[b]ecause this is a bench trial and the Court is capable of accessing [sic] the credibility of a witness's expertise, determining what evidence is helpful and what weight the evidence should be given at the time testimony is heard . . . ." *Fruge v. Augusta Barge Co.*, Civil Action No. 6:08-0010, 2009 WL 742310, at *2 (W.D. La. Mar. 19, 2009). Accordingly, that court determined that "a *Daubert* hearing is not necessary." *Id.* This court found the same reasoning applicable here, given the parties' arguments regarding the motions in limine. Consequently, the court denied Defendants' motions in limine [DE-46; DE-49] to exclude the testimony of Dr. Neulicht and Captain Davis. As a result, the court did not reach Defendants' arguments regarding excluding the affidavits of those opinion witnesses.

B. **Motions concerning the admissibility of Arthur Cockrell's written statement and diagram.**

The court also considered Defendants' Motion in Limine to Admit the Written Statement and Diagram of Arthur Cockrell [DE-50] and Plaintiff's Motion in Limine to Preclude the Introduction into Evidence of any Portion of the USCG Report of Investigation, Portions of Report on Defendants' Expert Captain Murphy, and Limit the Testimony of Captain Murphy [DE-60]. Both of these motions concerned, in part, Title 46 of the United States Code, Section 6308. That statute is titled "Information barred in legal proceedings" and provides, in pertinent part:

> Notwithstanding any other provision of law, no part of a report of a marine casualty investigation conducted under section 6301 of this title, including findings of fact, opinions, recommendations, deliberations, or conclusions, shall be admissible as evidence or subject to discovery in any civil or administrative proceedings, other than an administrative proceeding initiated by the United States.

46 U.S.C. § 6308(a). Courts have observed that "Congress enacted this statute to prevent the Coast Guard from becoming embroiled in private litigation resulting from marine accidents." *In re Cozy Cove Marina, Inc.*, 521 F. Supp. 2d 504, 507 (E.D.N.C. 2007) (citing *Falconer v. Penn Mar. Inc.*,

3

397 F. Supp. 68, 70 (D. Me. 2005)). The parties' briefing on their respective motions raised the issue of whether a written statement and diagram prepared by Arthur Cockrell, which he prepared and later submitted to the United States Coast Guard ("USCG") as part of its investigation, as well as to his insurer, constitute "part of a report of a marine casualty investigation."

The court is of the view that the written statement of Arthur Cockrell and his hand-drawn diagram do not constitute a "part of a report or a marine casualty investigation," as that term is used in 46 U.S.C. § 6308(a). Some courts have read the statute expansively, and determined that any part of report, regardless of whether it entailed "findings of fact, opinions, recommendations, deliberations, or conclusions" is rendered inadmissible. *See In re Eternity Shipping, Ltd.*, 444 F. Supp. 2d 347, 363 (D. Md. 2006) (determining that a transcript of an individual's interview with the Coast Guard, which was an exhibit to a report, was inadmissible); *Falconer v. Penn Maritime, Inc.*, 397 F. Supp. 2d 68, 70 (D. Me. 2005) (finding that all parts of a Coast Guard report, including photographs and notes of statements taken by a Coast Guard investigator, were inadmissible under the statute); *In re Complaint of Crosby Tugs, LLC*, No. CIV.A.02 1125C/W, 2004 WL 5482859, at *1-2 (E.D. La. Aug. 16, 2005) (determining that a measurement taken by the Coast Guard of the depth of a body of water during an investigation and referenced in a report was inadmissible); *In re Am. Milling Co.*, 270 F. Supp. 2d 1068, 1075-75 (E.D. Mo. 2003) (finding the transcript of a Coast Guard investigatory hearing inadmissible), *rev'd in part on other grounds*, 409 F.3d 1005 (8th Cir. 2005). The Coast Guard itself ostensibly agrees with a broad interpretation of the statute. *See* William R. Dorsey, III, *Marine Casualty Investigations by the United States Coast Guard ad the National Transportation Board*, 75 Tul. L. Rev. 1387, 1413 (2001) (noting that the Coast Guard considers "written statements, transcribed testimony, or documentary evidence obtained during an

investigation . . . to be part and parcel of the 'report' to which the prohibition of admissibility in § 6308 applies").

Other courts have taken a more narrow view of the statute. One court determined that photographs taken by a Coast Guard investigator were not part of the report. *In re Danos & Curole Marine Contractors, Inc.*, 278 F. Supp. 2d 783 (E.D. La. 2003). In that case, the court reasoned that "the photographs do not provide findings of fact, opinions, recommendations, deliberations nor conclusions, instead they merely illustrate the conditions of the objects depicted in the photos as they existed" on a certain date. *Id.* at 785. The court recognized that the "list provided in 46 U.S.C. § 6308(a) is illustrative and not exclusive," but it nevertheless declined to apply an expansive reading of the statute. *Id.* Similarly, a court in the Southern District of Florida found that a defendant could not rely on 46 U.S.C. § 6308(a) to withhold in discovery documents or other materials that it produced to the Coast Guard in furtherance of the Coast Guard's investigation. *Guest v. Carnival Corp.*, 917 F. Supp. 2d 1242, 1243-47 (S.D. Fla. 2012). The *Carnival* court reasoned that when the statute is read in conjunction with 46 C.F.R. § 4.07-1(b), which provides that "[t]he investigations of marine casualties and accidents and the determinations made are for the purpose of taking appropriate measure for promoting the safety of life and property at sea, and are not intended to fix civil or criminal responsibility," it "is clear that the scope of the statutory protection is limited to the Coast Guard's investigative report, and anything included within that report, in order to avoid having the Coast Guard's investigative report and its conclusions influence the litigation process." *Id.* at 1244-45. The *Carnival* court viewed the § 6308(a) as extending to "the specific Coast Guard investigative report and, arguably, any other Coast Guard document produced in the course of its investigation that contains any findings of fact, opinion, or conclusions" but not "a litigant's own

documents." *Id.*

The court agrees with the more narrow interpretation of the statute, and finds that Arthur Cockrell's written statement and diagram do not constitute "part of a report of a marine casualty investigation" within the meaning of § 6308. For that reason, and for the same reasons that the court denied the Defendants' motions to exclude the opinion witnesses' testimony, the court denied Plaintiff's Motion in Limine to Preclude the Introduction into Evidence of any Portion of the USCG Report of Investigation, Portions of Report on Defendants' Expert Captain Murphy, and Limit the Testimony of Captain Murphy [DE-60].

As to Defendants' motion to admit the Arthur Cockrell's written statement and diagram, the court recognized that Defendants had to cross an additional hurdle: Federal Rule of Evidence 807. The court expressed its reservations that Mr. Cockrell's statement "has equivalent circumstantial guarantees of trustworthiness," as required by Rule 807. Nevertheless, the court allowed Plaintiff's motion to admit the statement and drawing [DE-50], and will determine what weight, if any, should be accorded to that evidence after hearing it.

## C.   Remaining motions

As to the remaining motions argued at the hearing, the court denied Plaintiff's Motion in Limine to Exclude Evidence of Collateral Source Payments [DE-57] and Defendants' Motion in Limine to Exclude Evidence of Lost Future Wages and Lost Earning Capacity [DE-84], and again explained that it would hear the evidence and consider what weight, if any, should be given to it.

The court also allowed Plaintiff's Motion to Amend Pretrial Order Based on Newly Discovered Evidence [DE-80] and denied Defendants' Motion in Limine to Exclude the Testimony and Affidavit of Luther Terry Yeomans [DE-82]. The parties' cross-motions concerned Plaintiff's

6

last-minute discovery of a North Carolina Department of Transportation employee, Luther Terry Yeomans, to whom Arthur Cockrell allegedly admitted fault regarding the collision between the TONI SEA and the CARTERET. The court believes that Rule 16 governs the Plaintiff's motion, and that rule provides in pertinent part:

> (d) Pretrial Orders. After any conference under this rule, the court should issue an order reciting the action taken. This order controls the course of the action unless the court modifies it.
> (e). Final Pretrial Conference and Orders. The court may hold a final pretrial conference to formulate a trial plan, including a plan to facilitate the admission of evidence. The conference must be held as close to the start of trial as is reasonable, and must be attended by at least one attorney who will conduct the trial for each party and by any unrepresented party. The court may modify the order issued after a final pretrial conference only to prevent manifest injustice.

Fed. R. Civ. P. 16(d)-(e).

Here, United States Magistrate Judge Robert B. Jones, Jr., signed the final Amended Pretrial Order [DE-66] on October 27, 2014. That Order, therefore, controls this litigation. Accordingly, should any party want to "add a witness, an exhibit, claim or a defense, it is incumbent upon [that party] to show that absent the amendment [of the final pretrial order], 'manifest injustice' would result." *Cunningham v. LeGrand*, Civil Action No. 2:11-0142, 2012 WL 3028015, at *2 (S.D.W.Va. July 24, 2012). The Fourth Circuit has explained that final "[p]retrial orders are designed to expedite litigation and eliminate surprise by framing the issues remaining for trial." *Perfection-Cobey Co. v. City Tank Corp.*, 597 F.2d 419, 420 (4th Cir. 1979). Nevertheless, "total inflexbility is undesirable." Fed. R. Civ. P. 16 Advisory Committee's note (1983). This is the basis for the "manifest injustice" standard. *Id.*

Courts consider the following factors when applying the "manifest injustice" standard to motions to amend a final pretrial order: "(1) prejudice or surprise to the party opposing trial of the

7

issue; (2) the ability of that party to cure any prejudice; (3) disruption to the orderly and efficient trial of the case by inclusion of the new issue; and (4) bad faith by the party seeking to modify the order." *Kock v. Koch Indus., Inc.*, 203 F.3d 1202, 1223 (10th Cir. 2000); *see also Bristol Steel & Iron Works v. Bethlehem Steel Corp.*, 41 F.3d 182, 188 (4th Cir. 1994) (observing that court's apply the same factors when considering a party's request to call a witness not included on a pretrial witness list).

In applying these factors to this case, the court notes that this motion to amend was made *before* trial, and allegedly within a very short time after Plaintiff learned about the existence of Mr. Yeomans and his purported testimony. As to the first factor, of course there is some prejudice to Defendants by the late discovery and designation of Mr. Yeomans. That is the case, however, with most late-added witnesses. There does not appear to be undue surprise to Defendants, especially when the court considers the second and third factors. Again, at the time of the motion, the trial had not actually commenced. The prejudice resulting from the late notice of Mr. Yeomans's existence and purported testimony can be remedied by reopening discovery for a limited time period to depose him. Moreover, the disruption to the trial is minimal, given that the court was already planning to recess the trial to accommodate its criminal calendar and the scheduling needs of the parties to this case. Finally, the record does not contain evidence that would allow the court to find that Plaintiff acted in bad faith. The only indication in the record is that Plaintiff's counsel first learned of Mr. Yeomans at the end of October, and worked promptly to move to amend the pretrial order.

Accordingly, the court found that manifest injustice would result if the Amended Pretrial Order was not amended to allow for Mr. Yeomans' testimony. The court, however, reopened discovery for the limited purpose of allowing Defendants to depose Mr. Yeomans.

Finally, the court allowed Plaintiff's Motion to Reconsider Order Quashing Deposition

8

Notice and to Allow Deposition to be Used at Trial [DE-63], finding that Plaintiff had satisfied Rule 32(a)(4)(E) with regard to the testimony of Ashraf Guirgues, MD.

### D. Pretrial Order

At the hearing, the court concluded it would be more efficient to rule on any objection to an exhibit at the time the exhibit is introduced into evidence.

## II. POST-HEARING MOTIONS

Since the court recessed the trial in this matter, the parties have filed four motions: (1) Defendants' Motion to Strike the New Report of Ann T. Neulicht, Ph.D. and to Preclude Dr. Neulicth from testifying at trial [DE-91]; (2) Plaintiff's Second Motion to Amend Pretrial Order Based on Newly Discovered Evidence [DE-93]; (3) Defendants' Motion to Strike Certain Portions of Sherman Goodwin's Trial Testimony [DE-96]; and (4) Plaintiff's Motion to Continue [DE-97].

### A. Motion to Strike Dr. Neulicht's Report and Preclude Her From Testifying

Defendants move to strike what they characterize as a new report they received from Dr. Neulicht, one of Plaintiff's designated opinion witnesses in this case.

Magistrate Judge Jones issued the Scheduling Order [DE-25] in this case, which provided that reports from retained opinion witnesses were due from Plaintiff on or by April 7, 2014, and from Defendants on or by May 5, 2014. The Scheduling Order also specifically provided that "[s]upplementation under Rule 26(e) must be made promptly after receipt of the information by the party or counsel, but in no event later than the close of discovery." Scheduling Order [DE-25] at 2.

Dr. Neulicht prepared her report on April 4, 2014, and Plaintiff provided Defendants with a copy of that report on April 7, 2014, in accordance with Rule 26(a)(2) and the Scheduling Order. Defendants took Dr. Neulicht's deposition on June 13, 2014, and later, on September 22, 2014,

9

moved to exclude her testimony from this trial. As the court already has recounted, Plaintiff filed a an affidavit by Dr. Neulicht in response to that motion in limine, but did not supplement her April 4, 2014, report. Defendants' motion in limine was denied in open court on November 7, 2014.

Defendants assert that on the afternoon of November 10, 2014, Plaintiff sought to supplement Dr. Neulicht's April 4 Report via an email from Plaintiff's counsel [DE-91-1]. Attached to the email was a letter from Dr. Neulicht, dated October 30, 2014, to Plaintiff's counsel, stating that she was "writing to provide an update on the above captioned file." Mot. to Strike, Ex. B [DE-91-2]. Therein, Dr. Neulicht listed additional records she reviewed since issuing the April 4, 2014, Report, as well as additional interviews she conducted. Notably, all the additional interviews and reviews occurred after Defendants moved to exclude her testimony.

Rule 26(a)(2) governs the disclosure of expert, or as this court refers to it, opinion witness testimony. The rule provides that a party's disclosures regarding an expert witness must include a report, which in turn must contain, among other things, "(i) a complete statement of all opinions the witness will express and the basis and reasons for them; (ii) the facts or data considered by the witness in forming them; (iii) any exhibits that will be used to summarize or support them . . . ." Fed. R. Civ. P. 26(a)(2)(B). Indeed, the Advisory Committee's Note to the 1993 amendments to Rule 26 state that the report must indicate "the testimony the witness is expected to give during direct examination, together with the reasons therefor." Fed. R. Civ. P. 26 advisory committee's note to 1993 amendments. Additionally, Rule 26(a)(2)(E) requires the parties to supplement these disclosures "when required under Rule 26(e)." That rule, in turn, provides:

> For an expert whose report must be disclosed under Rule 26(a)(2)(B), the party's duty to supplement extends both to information included in the report and to information given during the expert's deposition. Any additions or changes to this information must be disclosed by the time the party's pretrial disclosures under Rule

10

26(a)(3) are due.

Fed. R. Civ. P. 26(e)(2). Here, however, the Scheduling Order set forth deadlines for both the disclosure of expert reports and for any supplementation of those reports. Accordingly, the court's inquiry into whether there have been any violations is governed by Rule 16(f).

At the outset, the court agrees with Defendants that Dr. Neulicht's October 30, 2014, letter [DE-91-2] cannot constitute supplementation within the meaning of the Federal Rules. Supplementation under Rule 26 allows a party to correct inadvertent mistakes or omissions in an expert report. "It does not cover failures of omission because the expert did an inadequate or incomplete preparation." *Akeva LLC v. Mizuno Corp.*, 212 F.R.D. 306, 310 (M.D.N.C. 2002). "To construe supplementation to apply whenever a party wants to bolster or submit additional expert opinions would reek havoc in docket control and amount to unlimited expert opinion preparation." *Id.* Here, Dr. Neulicht's letter can only charitably be interpreted as an attempt to bolster her original report. In fact, it appears to constitute an entirely new report, which relies on new information–much of which appears to have been obtained only after Defendants filed the motion in limine to exclude her testimony. This cannot be construed as an inadvertent mistake or omission in her original report. Instead, it can only be construed as a very untimely disclosure coming after trial had commenced in this action.

This leads to the question of what sanctions, if any, are appropriate for this untimely disclosure of an expert report. Because the Scheduling Order set forth deadlines for the disclosure of expert reports and for any supplementation of those reports, the court's inquiry is governed by Rule 16(f), which provides for sanctions when a party "fails to obey a scheduling or other pretrial order." Fed. R. Civ. P. 16(f)(1)(C); *see also Severn Peanut Co. v. Industrial Fumigant Co.*, No. 2:11-

11

CV-14-BO, 2014 WL 198217, at *2 (E.D.N.C. Jan. 15, 2014); *Akeva*, 212 F.R.D. at 309. Under this rule, the court may issue "any just order," including one imposing sanctions provided for Rule 37(b)(2)(A)(ii)-(vii). Those sanctions are as follows:

> (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
>
> (iii) striking pleadings in whole or in part;
>
> (iv) staying further proceedings until the order is obeyed;
>
> (v) dismissing the action or proceeding in whole or in part;
>
> (vi) rendering a default judgment against the disobedient party; or
>
> (vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

Fed. R. Civ. P. 37(b)(2)(A)(ii)-(vii). "The primary focus of the Rule 16(f) analysis is 'whether [the disobedient party] has shown good cause for its failure to timely disclose." *SMD Software, Inc. v. EMove, Inc.*, No. 5:08-CV-403-FL, 2013 WL 5592808, at *4 (E.D.N.C. Oct. 10, 2013) (quoting *Akeva*, 212 F.R.D. at 309). "If the court finds such violation without good cause, it has 'broad discretion in employing sanctions.'" *Id.* (quoting *Akeva*, 212 F.R.D. at 311). In determining what sanctions are appropriate, the court may consider:

> (1) the explanation for the failure to obey the order; (2) the importance of the testimony; (3) the prejudice to the opposing party by allowing the disclosures; (4) the availability of alternative or lesser sanctions; (5) the interest in the expeditious resolution of the litigation; (6) a court's need to manage its docket; and (7) public policy favoring disposition of cases on the merits.

*Id.*[2] Here, Plaintiff has not had the opportunity to respond to Defendants' motion. The court suspects

---

[2] Some courts within the Fourth Circuit have determined that the five factors for determining whether evidence should be excluded under Rule 37(c)(1), as articulated in *Southern States Rack & Fixture Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 597 (4th Cir. 2003), should also be used in a Rule 16(f) analysis. *See,*

12

it is highly unlikely that Plaintiff will be able to (1) show good cause for the untimely disclosure of Dr. Neulicht's new report, or (2) proffer a satisfactory explanation for his failure to obey the Scheduling Order. Nevertheless, out of an abundance of caution, the court will refrain from making a ruling on this motion exclude prior to receiving a response from Plaintiff. Accordingly, Plaintiff is DIRECTED to file his response, if he so chooses, within the time allowed by the Federal and Local Civil Rules. Defendants may file a reply, if they so choose, under the time allowed by the Federal and Local Civil Rules.[3]

## B. Second Motion to Amend Pretrial Order

As the court has recounted, the court has allowed Plaintiff's Motion to Amend Pretrial Order Based on Newly Discovered Evidence [DE-80] and denied Defendants' Motion in Limine to Exclude the Testimony and Affidavit of Luther Terry Yeomans [DE-82]. As part of that ruling, the court reopened discovery so that Defendants could depose Mr. Yeomans.

The parties indicate that Yeomans was deposed on November 14, 2014, and during his deposition he testified about a written statement he had provided to the North Carolina Department of Transportation ("NCDOT") in the wake of the accident. The September 7, 2010, Yeomans

---

*e.g., East West LLC v. Rahman*, No. 1:11-CV-1380, 2012 WL 4105129, at *6 (E.D.Va. Sept. 17, 2012). The *Southern States* factors include "(1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence." 318 F.3d at 597. The factors are inherently similar to those this court considers under Rule 16(f).

[3] The court also observes that as a sanction, Defendants have asked for the entire exclusion of Dr. Neulicht's testimony. Defendants have not cited, and the court itself has not identified, a case where the sanction for an untimely report, purported to be a supplementation, was the exclusion of *all* of the opinion witness' testimony. Rather, the court only has identified cases where the witness was precluded from testifying as to the matters contained in the untimely additional report. *See, e.g., Severn Peanut Co., Inc. v. Industrial Fumigant Co.*, No. 2:11-CV-00014-BO, 2014 WL 198217, at *4 (excluding evidence of testing conducted by expert witnesses after the deadline for disclosure).

13

statement was produced on November 17, 2014 in response to a discovery request issued by Defendants. Plaintiff now moves to amend the pretrial order to include the September 7, 2010 Yeomans statement. Defendants have opposed the motion, arguing that Plaintiff should not benefit from discovery he did not request, and that the statement constitutes inadmissible hearsay. The court will refrain from ruling on the motion until the time for filing a reply has passed.

### C. Defendants' Motion to Strike Certain Portions of Sherman D. Goodwin's Trial Testimony

Defendants have moved pursuant to Rule 37 of the Federal Rules of Civil Procedure to strike portions of Plaintiff's trial testimony, arguing that Plaintiff failed to supplement his discovery response to disclose how he allegedly sustained an injury. Specifically, Defendants contend that Plaintiff was required to supplement his discovery responses pursuant to Rule 26(e). Plaintiff is directed to file his response, if any, to this motion within the time allowed by the Federal and Local Civil Rules. Defendants may file a reply, if they so choose, under the time allowed by the rules.

### D. Plaintiff's Motion to Continue

On the late afternoon of November 20, 2014, counsel for Plaintiff emailed Defendants' counsel and the court and indicated that based on a recommendation from Plaintiff's treating physician to restrict his traveling, Plaintiff would be moving to continue the recommencement of the bench trial in this action, which was scheduled for Monday, November 24, 2014 at 9 a.m. The following morning, Defendants' counsel emailed the court and the parties stating their objection to the continuance, and requesting a telephonic hearing. Thereafter, Plaintiff filed his Motion to Continue [DE-97] and attached the letter from his physician [DE-97-1].

The court arranged for a teleconference with the parties on Friday, November 21, 2014, at 10:15 a.m. Defendants were represented by counsel Christopher Abel and Stephen Jackson and

14

Plaintiff was represented by Stevenson Weeks. During the teleconference, Plaintiff's counsel reiterated the reasons set forth in the Motion to Continue [DE-97]; specifically, a concern for Plaintiff's health. Defendants stated their objection to any continuance, arguing that Plaintiff already had testified, and contending that unlike a criminal trial, Plaintiff did not have an absolute right to be present. Additionally, Defendants offered to pay for lodging for Plaintiff to accommodate his doctor's recommended travel conditions. Defendants also requested that Plaintiff be able to participate electronically. Defendants noted that Plaintiff previously testified he had refused to have the same surgery in the past, and also noted that he was asking for lengthy continuance, given the likely recuperation period following surgery.

The court inquired whether Plaintiff's current health status was related to the alleged original injury, and Plaintiff's counsel stated he did not know. The court inquired whether reopening discovery would be necessary, and Defendants argued they feared the Plaintiff would use any continuance to reset the status of the case and essentially begin the litigation again. The court indicated that it understood Defendants' concern, but also that some limited discovery may be desirable if the surgery is related to the alleged original injury. Defendants' counsel argued that although Plaintiff's counsel may be at a handicap if Plaintiff was not personally present at the trial, defense counsel has been operating under a similar challenge due to Arthur Cockrell being deceased.

Given the potential for Plaintiff's current health status to be related to the alleged original injury, the court concluded at the hearing that a continuance was necessary. Accordingly, in the interests of justice, this matter is CONTINUED to the term of court commencing on February 17, 2015.

As the court stated in the teleconference, this trial already has begun, and there will be no "re-

15

set" of the trial "to zero." The court indicated that the parties may move, if necessary, for a limited reopening of discovery related to Plaintiff's anticipated surgery. The court also DIRECTED Plaintiff to provide Defendant with the new medical records of Plaintiff.

### III. CONCLUSION

For the foregoing reasons, it is ORDERED that:

(1) Defendants' motions in limine to exclude the testimony of Ann T. Neulicht, Ph.D [DE-46] and portions of the testimony of Captain Donald Davis [DE-49] are DENIED;

(2) Defendants' Motion in Limine to Admit the Written Statement and Diagram of Arthur Cockrell [DE-50] is ALLOWED;

(3) Plaintiff's Motion in Limine to Preclude the Introduction into Evidence of any Portion of the USCG Report of Investigation, Portions of Report on Defendants' Expert Captain Murphy, and Limit the Testimony of Captain Murphy [DE-60] is DENIED;

(4) Plaintiff's Motion in Limine to Exclude Evidence of Collateral Source Payments [DE-57] and Defendants' Motion in Limine to Exclude Evidence of Lost Future Wages and Lost Earning Capacity [DE-84] are DENIED;

(5) Plaintiff's Motion to Amend Pretrial Order Based on Newly Discovered Evidence [DE-80] is ALLOWED;

(6) Plaintiff's Motion to Reconsider Order Quashing Deposition Notice and to Allow Deposition to be Used at Trial [DE-63] is ALLOWED;

(7) Plaintiff's Motion to Continue [DE-97 is ALLOWED and the recommencement of this trial is continued to the court's February 17, 2015 term of court; and

(8) the court will rule on (a) Defendants' Motion to Strike the New Report of Ann T.

16

Neulicht, Ph.D. and to Preclude Dr. Neulicht from testifying at trial [DE-91], (b) Plaintiff's Second Motion to Amend Pretrial Order Based on Newly Discovered Evidence [DE-93], and (c) Defendants' Motion to Strike Certain Portions of Sherman Goodwin's Trial Testimony [DE-96] when briefing is complete.

SO ORDERED.

This the 21st day of November, 2014.

*James C. Fox*
James C. Fox
Senior United States District Judge